# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ELIE HARFOUCHE,

    Plaintiff,

v.

HAIFA WEHBE, *et al*.,

    Defendants.

Case No. 2:13-cv-00615-LDG (NJK)

**ORDER**

    The plaintiff, Elie Harfouche, brought this suit against defendants Joseph Rahi, Haifa Wehbe, Youssef Harb, Maroun Abiaad, Stars on Tour, Inc., and La Vedette Productions, Inc., for breach of contract, unjust enrichment, tortious interference with contract, and tortious interference with prospective business advantage. Abiaad, La Vedette, and Stars on Tour have moved to dismiss, or alternatively for summary judgment (## 14, 16). Harfouche did not file an opposition, but instead moved to stay this action (#26). Abiaad, La Vedette, and Stars on Tour have opposed the motion to stay (#32), as has Rahi (#29). The Court will deny Harfouche's motion to stay, and will grant the motion to dismiss.

    In addition, Wehbe has moved to quash service and dismiss this action (#39). Harfouche opposed the motion and cross-moved to either declare the service proper or order that Wehbe's attorney be appointed as an agent upon whom service can be

processed (#41).  The Court will grant Wehbe's motion, and deny Harfouche's cross-motion.

Motion to Stay

In his motion to stay, Harfouche asks this Court to stay this action to allow the District of New Jersey to have an opportunity to consider a motion to re-open a case there. As Harfouche has previously represented to this Court, he initiated the litigation in New Jersey in 2010.  As Harfouche concedes, "the same case involving the same parties cannot and should not be litigated in two separate forums."  The New Jersey litigation, however, was dismissed.  That Harfouche has attempted to re-open the New Jersey litigation is not sufficient reason to stay this matter.  Accordingly, the Court will deny his motion to stay.

Motion to Dismiss

The defendants' motion to dismiss, brought pursuant to Fed. R. Civ. P. 12(b)(6), challenges whether the plaintiff's complaint states "a claim upon which relief can be granted."  In ruling upon this motion, the court is governed by the relaxed requirement of Rule 8(a)(2) that the complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."  As summarized by the Supreme Court, a plaintiff must allege sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Nevertheless, while a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*, at 555 (citations omitted).  In deciding whether the factual allegations state a claim, the court accepts those allegations as true, as "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).  Further, the court "construe[s] the pleadings in the

light most favorable to the nonmoving party." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F3.d 895, 900 (9th Cir. 2007).

However, bare, conclusory allegations, including legal allegations couched as factual, are not entitled to be assumed to be true. *Twombly*, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal* 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.,* at 1950. Thus, this court considers the conclusory statements in a complaint pursuant to their factual context.

To be plausible on its face, a claim must be more than merely possible or conceivable. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief." *Id.*, (citing Fed. R. Civ. Proc. 8(a)(2)). Rather, the factual allegations must push the claim "across the line from conceivable to plausible." *Twombly.* 550 U.S. at 570. Thus, allegations that are consistent with a claim, but that are more likely explained by lawful behavior, do not plausibly establish a claim. *Id.*, at 567.

The essence of the motion to dismiss filed by Abiaad, La Vedette, and Stars on Tour is that Harfouche's claims against them are barred by the statute of limitations, and that this Court lacks personal jurisdiction over these defendants. Harfouche did not file an opposition to the motion, instead filing only a motion to stay. The failure to file an opposition constitutes consent to having the motion granted. *See,* Local Rule 7-2(d). Nevertheless, even if Harfouche had filed an opposition, the Court would have granted the motion as it is meritorious.

As alleged in the complaint, Harfouche signed a contract with Wehbe in 2006. Harfouche alleges that, pursuant to this contract, Wehbe agreed to perform nine shows at locations in Canada and the United States. He further asserts they entered into an

3

addendum to the contract in April 2007, in which they agreed the tour would occur in October and November 2007, and would include a show in Las Vegas. He alleges that, after he performed his obligations under the contract, Wehbe did not appear at any of the show dates in the United States. He further asserts that Wehbe entered into a contract (or contracts) with Abiaad, Harb, and Vedette for shows that conflicted with the show dates arranged by Harfouche, or made the shows arranged by Harfouche economically unfeasible.

In Nevada, claims for intentional interference with prospective business advantage and contractual relations are subject to the three-year statute of limitations in N.R.S. 11.190(3)(c). *See, Stalk v. Mushkin*, 125 Nev. 21, 22, 199 P.3d 838, 839 (2009). The Nevada Supreme Court explained that "[b]ecause we have determined that business interests are personal property, we conclude that intentional interference with these business interests are actions for taking personal property and not actions for injuries to a person." *Id.,* at 842, *citing Clark v. Figge*, 181 N.W.2d 211, 216 (Iowa 1970) (concluding that a claim for interference in business relationships was "fundamentally proprietary in character although incidental injuries may have been of a different nature").

Under Nevada law, the statute of limitations begins to run "when the wrong occurs and a party sustains injuries for which relief could be sought." *Petersen v. Bruen*, 106 Nev. 271, 274, 792 P.2d 18 (1990). When a plaintiff has not discovered his injury or cause of injury at the time of its occurrence, the statute of limitations is tolled "until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Id.* However, when "uncontroverted evidence proves that the plaintiff discovered or should have discovered the facts giving rise to the claim," such a determination can be made as a matter of law. *Siragusa v. Brown*, 114 Nev. 1384, 1393, 971 P.2d 801 (1998).

In *Stalk*, the Nevada Supreme Court noted that both parties offered various events as triggering the beginning of the limitations period on their claims for intentional

4

interference with prospective advantage and contractual relations. The court selected the date occurring last in time, which was the date that plaintiff was terminated from the subject contract. *See*, 199 P.3d at 842. This district court has previously acknowledged that Nevada does not have case law directly on point as to when an interference with contractual relations claim accrues, but held "that a tortious interference with contractual relations claim does not accrue unless there is actual disruption of the contract, whether it is anticipatory or immediate." *Treasury Solutions Holdings, Inc. v. Upromise, Inc*. 3:10-CV-00031-ECR, 2012 WL 40462 (D. Nev. Jan. 6, 2012). Thus, in *Treasury Solutions*, the court determined that the plaintiff's claim accrued when the plaintiff was notified that the third party would close out its contract with the plaintiff, even if the actual close out did not occur until later. See id.

Here, Harfouche's complaint does not specifically allege the wrongful conduct that gives rise to his intentional interference claims, alleging only that his contract with Wehbe was breached when she "did not appear and perform at any of the prearranged and agreed-upon concert dates arranged and organized by Plaintiff in the United States." He further alleges that, at some point in time, Wehbe "entered into a contract or contracts with defendant Abiaad, Harb and Vedette for show and concert performances either in conflict with the dates arranged by Plaintiff, or at dates close enough to the dates arranged by Plaintiff so as to make those shows economically unfeasible." Compl., Dkt. No. 1, ¶¶ 17, 19. Construing Harfouche's allegations as indicating that the moving defendants interfered with his contract by causing Wehbe to perform at different locations on the same or similar dates, his intentional interference claims accrued no later than late 2007, when Wehbe failed to appear at his shows, but instead appeared at other locations on the same or similar dates. As the alleged interference occurred more than five years prior to his filing of the instant lawsuit, Harfouche's claims for tortious interference with a contract and tortious

interference with a prospective business advantage are time-barred and must be dismissed with prejudice as against defendants Abiaad, La Vedette, and Stars on Tour.

<u>Wehbe's Motion to Quash and Motion to Dismiss</u>

As alleged by Harfouche in his complaint, Wehbe is a citizen and resident of Lebanon. Pursuant to Federal Rule of Civil Procedure 4(f)(2)(C)(ii), a person may be served outside of any judicial district of the United States by "any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt." Harfouche filed a Certificate of Service (#35) on Wehbe, in which his counsel avers that she caused the summons and complaint to be served upon Wehbe using UPS International. The Certificate of Service does not indicate that the clerk addressed and sent the mail.

Harfouche presents no argument that his attempted service on Wehbe complied with the requirement of Rule 4(f)(2)(C)(ii). Nor does he provide any argument that his service complied with any other method of service delineated in Rule 4. Rather, he moves the Court to either approve his prior attempted service by UPS International under Rule 4(f)(3), or allow him to serve Wehbe's attorney under Rule 4(f)(3), which allows service by means "as the court orders."

Harfouche provides no authority for the Court to approve a previously attempted and insufficient service of process. The Court will not do so now.

As to service upon the attorney, Harfouche argues that "[i]n cases where plaintiff had made a reasonable attempt to formally serve a foreign defendant and thereafter an attorney was in fact retained and appeared on behalf of the foreign entity, courts have repeatedly allowed alternate service upon the defendant's attorney under *Fed. R. Civ. Proc. 4(f)(3)* in order to avoid unnecessary delay." The argument fails as Harfouche has not offered any indication that he has made a reasonable attempt to formally serve Wehbe. Harfouche's own representations to this Court, in regards to this action, indicate that he has yet to attempt to serve Wehbe by any method of service permitted under Rule 4.

6

1  While it may be true that Wehbe is aware of this litigation, and while she may be
2  represented by counsel in litigation against her that was initiated by Harfouche in New
3  Jersey, these facts do not excuse Harfouche from properly serving her in the litigation he
4  initiated against her in Nevada (even if, as Harfouche claims, it is the same case against
5  the same parties).
6     Wehbe has not offered any authority indicating that, as Harfouche's attempted
7  service did not comply with Rule 4, this matter must be dismissed.  The appropriate
8  remedy, in this case, is limited to quashing the attempted service as insufficient.
9     Therefore, for good cause shown,
10    THE COURT **ORDERS** that plaintiff's Motion to Stay (#26) is DENIED;
11    THE COURT FURTHER **ORDERS** that the Motion to Dismiss (#14), filed by
12 defendants Maroun Abiaad, La Vedette Productions, Inc., and Stars on Tour, Inc., is
13 GRANTED.  These moving defendants are DISMISSED from this action with PREJUDICE.
14    THE COURT FURTHER **ORDERS** that the Motion for Summary Judgment (#16),
15 filed by defendants Maroun Abiaad, La Vedette Productions, Inc., and Stars on Tour, Inc.,
16 is DENIED as moot.
17    THE COURT FURTHER **ORDERS** that Defendant Haifa Wehbe's Motion to Quash
18 Service of Process and to Dismiss for Insufficient Service of Process (#39) is GRANTED as
19 to the Motion to Quash and is DENIED as to the request to dismiss this action for the
20 insufficient service of process.
21    THE COURT FURTHER **ORDERS** that the Clerk of the Court shall STRIKE Elie
22 Harfouche's Certificate of Service (#35) upon Defendant Haifa Wehbe.
23 DATED this ___18___ day of March, 2014.

_____
Lloyd D. George
United States District Judge

7